JS 44 (Rev 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Alison Burdo

## DEFENDANTS

American Business Journal d/b/a Philadelphia Business Journal

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Fernando I. Rivera, Esquire, Console Mattiacci Law, LLC, 1525 Locust Street, 9th Floor, Philadelphia, PA 19102, (215)-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U S Government Plaintiff
- [ ] 2 U S Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U S Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 12101, et seq. ("ADA"), 43 P.S. § 951, et seq. ("PHRA"), Phila. Code § 9-1101, et seq. ("PFPO")

Brief description of cause:
Plaintiff brings this claim for unlawful discrimination due to her disability and in retaliation for her complaints of sex and disability discrimination.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   12/8/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA 19103 _____

Address of Defendant: _____ 400 Market Street, Suite 1200, Philadelphia, PA 19106 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA 19106 _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/08/2020 _____ _____ 319009

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.* **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify)* _____

*B.* **Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify)* _____

---

### ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Fernando I. Rivera _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☒ Relief other than monetary damages is sought.

DATE: 12/08/2020 _____ _____ 319009

*Attorney-at-Law / Pro Se Plaintiff* — *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Alison Burdo | : | CIVIL ACTION |
| v. | : | |
| American City Business Journal d/b/a | : | |
| Philadelphia Business Journal | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( x )

| | | |
|---|---|---|
| 12/8/2020 | *signature* | Plaintiff, Alison Burdo |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-754-4938 | rivera@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ALISON BURDO** | : | |
| Philadelphia, PA 19130 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.** |
| | : | |
| **AMERICAN CITY BUSINESS** | : | |
| **JOURNALS d/b/a PHILADELPHIA** | : | |
| **BUSINESS JOURNAL** | : | |
| 400 Market Street, Suite 1200 | : | |
| Philadelphia, PA 19106 | : | |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |
| | : | |

## CIVIL COMPLAINT

### I.   INTRODUCTION

Plaintiff, Alison Burdo ("Plaintiff"), brings this action against her former employer, American City Business Journals d/b/a Philadelphia Business Journal ("Defendant"), because she was subjected to unlawful discrimination due to her disability and retaliated against because of her complaints of sex and disability discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"). Plaintiff seeks all damages, including economic loss, compensatory, liquidated and punitive damages, her attorney's fees and costs, and all other available relief under applicable federal, state, and local laws as this Court deems appropriate.

II.   **PARTIES**

1.      Plaintiff is an individual and a citizen of the Commonwealth of Pennsylvania, who resides in Philadelphia, PA.

2.      Plaintiff is a female.

3.      At all times material hereto, Plaintiff had a qualifying disability under the ADA, the PHRA, and the PFPO.

4.      At all times material hereto, Plaintiff was disabled under the ADA, the PHRA, and the PFPO in that she suffered from anxiety, major depressive disorder, acute, and acute grief, and post-traumatic stress disorder, which substantially limited one (1) or more of her major life activities, and/or had a record of impairment, and/or was regarded as having such impairment.

5.      Defendant is a corporation maintaining a principle place of business located at 400 Market Street, Suite 1200, Philadelphia, PA 19106.

6.      At all times material hereto, Plaintiff was employed by Defendant to work at its office located in Philadelphia, PA.

7.      At all times material hereto, Defendant employed more than fifteen (15) employees.

8.      At all times material hereto, Defendant employed four (4) or more individuals in the Commonwealth of Pennsylvania.

9.      At all times material hereto, Defendant engaged in an industry affecting interstate commerce that regularly does business in the Commonwealth of Pennsylvania and with entities and individuals in the Commonwealth of Pennsylvania and in the City of Philadelphia. Defendant also employ residents of the Commonwealth of Pennsylvania and the City of Philadelphia.

10.     At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business interests.

11.     At all times material hereto, Defendant was an "employer" within the meanings of Title VII, the ADA, the PHRA, and the PFPO.

12.     At all times material hereto, Plaintiff was an "employee" within the meanings of Title VII, the ADA, the PHRA, and the PFPO.

**III.    JURISDICTION AND VENUE**

13.     The causes of action that form the bases of this matter arise under Title VII, the ADA, the FMLA, the PHRA, and the PFPO.

14.     The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. § 1331.

15.     The District Court has jurisdiction over Count II (ADA) pursuant to 28 U.S.C. § 1331.

16.     The District Court has jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. § 1367.

17.     The District Court has jurisdiction over Count IV (PFPO) pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b).

19.     On or about February 8, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein

("Complaint"). Attached hereto, incorporated herein, and marked as Exhibit A is a true and correct copy of Plaintiff's Complaint (with personal identifying information redacted).

20.     On September 28, 2020, the EEOC issued Plaintiff a Notice of Right to Sue regarding her Charge. Attached hereto, incorporated herein, and marked as Exhibit B is a true and correct copy of this notice.

21.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

22.     Plaintiff was hired by Defendant as a Digital Producer in or around April of 2015.

23.     Plaintiff reported to Craig Ey (male), Editor-in-Chief ("Ey"), and Dell Poncet (male), Managing Editor ("Poncet"); Ey and Poncet report to William Sandy Smith (male), Market President and Publisher ("Smith").

24.     On November 29, 2017, in a meeting with Angelica Garcia (female), Events Director ("Garcia"), Plaintiff complained of sex discrimination (the "Nov. 29th Meeting").

25.     During the Nov. 29th Meeting, Plaintiff complained to Garcia that Defendant's upcoming event—entitled "Sexual Harassment: How you can protect your company"—was insensitive to female employees and that another local outlet had recently received backlash after having an all-male panel on women's issues in the workplace.

26.     In response, Garcia told Plaintiff that she would raise her concerns at the next management meeting.

27.     Later that day, following the Nov. 29th Meeting, Ey called Plaintiff into his office to ask her why she went "over his head" to Garcia with her complaint, and instructed her to never speak to another manager without him present.

28.     On December 21, 2017, Ey unjustly criticized Plaintiff and removed her from moderating a panel.

29.     Ey criticism of Plaintiff and removal as moderator on the panel was pretext for retaliation due to Plaintiff's complaints of sex discrimination.

30.     On August 16, 2018, during a work event, Bruce Johnson (male), Contractor ("Johnson"), asked Plaintiff if she had an announcement to make about herself, to which Plaintiff stated that she did not. Johnson then asked Plaintiff if she was pregnant.

31.     Plaintiff was not pregnant and was offended by the question.

32.     On or about August 18, 2018, in a meeting with Garcia, Plaintiff complained of sex discrimination (the "Aug. 18th Meeting").

33.      Plaintiff complained that Johnson asked if she was pregnant and that Johnson had sent an email to Plaintiff in February, stating that he wanted to "find a reason to email [Plaintiff]."

34.     Plaintiff understood Johnson to be interested in a personal relationship with her.

35.     Defendant took no action to remedy or prevent the sex discrimination to which Plaintiff had been subjected.

36.     On or about September 12, 2018, in a meeting with Smith, Plaintiff complained of sex discrimination, including Johnson's pregnancy comment and email to Plaintiff (the "Sept. 12th Meeting").

37.     At the Sept. 12th Meeting, Plaintiff complained that Ey did not treat her male coworkers in the same manner as he treated Plaintiff, and that other employees have also noticed this differential treatment.

38.     Smith stated that he would inform Human Resources of Plaintiff's complaints.

39.     Defendant took no action to remedy or prevent the sex discrimination to which Plaintiff had been subjected and complained of at the Sept. 12th Meeting.

40.     On October 10, 2018, in a meeting with Ey and Poncet (the "Oct. 10th Meeting"), Plaintiff was issued a formal written warning (the "Written Warning").

41.     The Written Warning threatened that Plaintiff's "job will be in jeopardy" if Defendant did not "see immediate and sustained improvement."

42.     The alleged issues cited in the Written Warning were false and in retaliation for Plaintiff's complaints of sex discrimination.

43.     On October 11, 2018, in a meeting with Smith, Plaintiff complained of sex discrimination related to Ey's treatment of her (the "Oct. 11th Meeting").

44.     In response, Smith stated that it could be that Plaintiff has a tough personality for Ey to handle.

45.     Plaintiff then stated to Smith that Ey did not treat Kenneth Hilario (male), Hospitality and Tourism Report ("Hilario"), in the same manner as he treated her, even though employees complain that Hilario is rude and disrespectful.

46.     Unlike Plaintiff, Hilario was not issued a Written Warning for any perceived issues with this behavior or personality.

47.     Defendant took no action to remedy or prevent the sex discrimination to which Plaintiff had been subjected and complained of at the Oct. 11th Meeting.

48.     On October 31, 2018, while Plaintiff was at work, she learned that her boyfriend had died in a car accident that morning.

49.     After receiving the news, Plaintiff left work immediately and began a leave of absence.

50.     On November 14, 2018, Plaintiff returned to work from her leave of absence.

51.     On November 16, 2018, in an email to Laura Barringer (female), Human Resources/Legal Director ("Barringer"), Plaintiff followed up on her concerns regarding the issuance of Defendant's pretextual Written Warning. Specifically, Plaintiff stated that she was "still unclear on the expectations and consequences of the formal write up [because] there [was] no clear guidelines for what is considered improvement on [Plaintiff's] part."

52.     In or around mid-to-late-November of 2018, Plaintiff was diagnosed with acute anxiety and depression.

53.     In or around mid-to-late-November of 2018, Plaintiff was asked by Smith and Poncet if she was seeing a doctor or a therapist.

54.     In the afternoon of November 30, 2018, without Plaintiff making a request, Barringer sent Plaintiff an email that attached FMLA leave documents and information.

55.     In her email, Barringer stated that Smith had called her to report that "[Plaintiff] had to leave the office" that day, which was false.

56.     Barringer further stated that she "should have a call to talk about next steps and [her] options[.]"

57.     During the Dec. 6th Meeting, to discuss Plaintiff's FMLA leave, Smith told Plaintiff that her "demeanor" was a distraction to her co-workers.

58.     On or about December 10, 2018, Plaintiff submitted her intermittent FMLA leave request forms to Smith.

59.     Plaintiff's FMLA forms stated that she had been diagnosed with "Anxiety, Major Depressive Disorder, Acute, and Acute Grief," and that, "until [Plaintiff's] Depressive symptoms

are stabilized, [Plaintiff] will need to be seen and/or need rest to maintain overall health both physical and mental health."

60.    Plaintiff's FMLA forms further stated that "crippling Depression will flare up and require absence from work."

61.    On December 13, 2018, Plaintiff's request for intermittent FMLA leave was approved.

62.    In or around January of 2019, Plaintiff was diagnosed was post-traumatic stress disorder.

63.    On January 10, 2019, in a meeting with Garcia, Plaintiff complained that Defendant never addressed her complaints of sex discrimination.

64.    In response, Garcia told Plaintiff that Defendant should have done something.

65.    On January 11, 2019, in a conversation with Garcia, Plaintiff stated that it has taken "a lot of work to keep [her] contained emotionally," and that she hoped her complaints were taken seriously.

66.    Garcia told Plaintiff that she informed Smith of their conversation on January 10, 2019.

67.    During the afternoon of January 14, 2019, in a meeting with Ey and Poncet (the "Jan. 14th Meeting"), Plaintiff was issued a Final Written Warning (the "Final Written Warning").

68.    During the Jan. 14th Meeting, Ey interrupted Plaintiff when she tried to speak or explain her perspective and was told that this was not "up for discussion."

69.     In the Final Written Warning, Plaintiff was subjectively criticized for her, *inter alia*, "behavior and unprofessionalism" and her "attitude, communication, and professional demeanor[.]"

70.     The Final Written Warning contained false statements and references to Plaintiff's alleged performance issues and criticisms of Plaintiff that were related to symptoms of her disability

71.     Defendant issued Plaintiff the Final Written Warning because of her disability and/or in retaliation for Plaintiff's complaints of sex discrimination.

72.     After the Jan. 14th Meeting, Plaintiff met with Ey, Poncet, and Smith again and asked why she was issued the Final Written Warning, as her performance did not warrant it.

73.     In response, Plaintiff was told by Smith that her behavior needed to improve, and that employees had complained of her "behavior" and "tone."

74.     Plaintiff further stated that she felt like she was under a microscope, that she was being treated differently than other employees, and that she felt like she was being set up for termination.

75.     In response, Plaintiff was told by Smith and Ey, without explanation, that the Final Written Warning was warranted and that it would stand.

76.     Smith further stated that Defendant had made enough allowances for her and that she had been accommodated enough.

77.     Smith further told Plaintiff that she was trying to draw attention to herself.

78.     During the Jan. 14th Meeting, Poncet told Plaintiff that:

        a.      other employees in the office had experienced deaths of loved ones and they had "gotten over it"; and

b.    questioned whether Plaintiff wanted to be "normal."

79.    On January 15, 2019, in an email to Ey, Poncet, Smith, and Barringer, Plaintiff raised concerns that she was issued the Final Written Warning when "managers [were] aware of the personal traumas [she] ha[d] recently endured," and that the "focus on tone" was connected to her "emotional state."

80.    In her January 17, 2019 email, Plaintiff complained that, in the Jan. 14th Meeting, she was told "that other people have experienced deaths of loved ones and have gotten over it" by Poncet and that "[she is] expected to be chattier with [her] coworkers" by Smith.

81.    On or about January 26, 2019, Plaintiff submitted updated FMLA forms to Defendant, which stated that, her "[d]epressive symptoms have increased significantly," that her "mental health is declining," and that, "if not treated adequately, [Plaintiff's] [d]epressive symptoms could escalate and threaten [her] safety."

82.    As a result of the discrimination and retaliation to which Plaintiff had been subjected to at Defendant, she was forced to take a medical leave of absence.

83.    On February 8, 2019, Plaintiff filed a Complaint with the PHRC, which was cross-filed with the EEOC, against Defendant alleging discrimination based on the discriminatory and retaliatory conduct alleged herein.

84.    On February 11, 2019, Plaintiff informed Defendant—including Ey, Poncet, Smith, and Barringer—that she filed a Complaint with the PHRC.

85.    On June 21, 2019, Barringer told Plaintiff, via email, that Defendant could "no longer hold [her] position open for [her]," but if there were "any accommodations short of continuous leave that [Defendant] could provide to facilitate [Plaintiff's] return to work, [she should] let [Defendant] know."

86.     On June 27, 2019, Plaintiff's doctor sent an accommodation request to Barringer on her behalf, clearing her to return to work remotely on July 1, 2019, and requesting that she be permitted to work from home as an accommodation for her disability.

87.     On July 1, 2019, Barringer stated that Defendant could "approve a temporary part-time schedule over the next two and a half weeks to facilitate [Plaintiff's] return to work full time."

88.     On July 2, 2019, Barringer told Plaintiff, by email, that Defendant was "not rejecting [Plaintiff's] request, but rather proposing a reasonable alternative that would work for [Defendant's] business needs and facilitate [Plaintiff's] transition back to the office full time."

89.     Barringer also stated that Defendant could "discuss other options" if this did "not work for [Plaintiff]."

90.     On July 16, 2019, Plaintiff's doctor provided Barringer with answers to her additional questions, on Plaintiff's behalf, regarding her requested accommodation of working from home.

91.     On July 17, 2019, in an email from Barringer at 6:36 pm, she stated that she "confirmed with [Smith] that [Plaintiff would be] working tomorrow and Friday from 7:30-12:30 remotely and participating in meetings as needed via phone or Skype. Then [Plaintiff would] be back in the office full time on Monday [July 22, 2019]."

92.     In response, Plaintiff stated that, "[her] doctor ha[d] NOT medically cleared [her] to physically return to the office"; that her doctor only "ha[d] medically cleared [her] to complete [her] work duties remotely"; and that "[she is] able to perform the duties outlined by [her] doctor remotely."

93.     Plaintiff further stated that, as Barringer "requested, [she] went back to [her] doctor to get a more detailed plan about [her] return," and that her doctor "ha[d] medically cleared [her] to work remotely from 7[:]30 am to 12[:]30 pm Monday to Friday."

94.     In response to Plaintiff's July 17th Email, Barringer falsely stated that Plaintiff had "previously provided a return to work date of July 22."

95.     Barringer further stated, for the first time that, if Plaintiff was "unable to return to work full time in the office as of July 22, [Plaintiff's] employment w[ould] be terminated."

96.     In subsequent responses, Barringer commented several times on Plaintiff being out of work on a medical leave of absence for "such a long period of time."

97.     On July 18, 2019, Plaintiff told Barringer that she had only been medically cleared to return to work remotely; that she was able to perform her job duties from home; and questioned why Defendant was no longer willing to provide her with a transition period before returning to the office on a full-time basis.

98.     On July 19, 2019, Plaintiff worked remotely from home.

99.     On July 19, 2019, in an email from Barringer, Defendant denied Plaintiff's request to work from home as an accommodation.

100.     On July 22, 2019, Plaintiff began working from home, and was instructed by Donahue to stop working; Plaintiff received no further communication from Defendant regarding her employment status.

101.     On July 23, 2019, Plaintiff attempted to work from home, but was unable to access her work email or Defendant's system.

102.     On July 23, 2019, Barringer informed Plaintiff that her "employment was terminated yesterday [July 22, 2019] when [Plaintiff] did not show up to the office[.]"

103.   As a result of Defendant's failure to accommodate Plaintiff, she was terminated.

104.   Defendant assigned Plaintiff's former job duties and responsibilities to less-qualified, non-disabled and/or noncomplaining employees and/or employees who have not sought reasonable accommodations.

105.   At all times material hereto, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

106.   Defendant failed to provide Plaintiff with reasonable accommodations that would have allowed her to perform the essential functions of her job.

107.   Defendant treated Plaintiff less favorably, and in a more hostile and dismissive manner, than non-disabled employees and/or employees who had not complained of discrimination.

108.   Defendant failed to provide a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

109.   Defendant's stated reason for Plaintiff's termination is pretext for disability discrimination and/or retaliation for complaining of sex and disability discrimination.

110.   Defendant's comments and conduct evidences a bias against employees with disabilities and employees who complaint of discrimination.

111.   Defendant failed to reasonably accommodate Plaintiff's disability by allowing her to work remotely from home.

112.   Plaintiff's disability (including history of and regarded as) were a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, but not limited to, her termination.

113.   Plaintiff's request for a reasonable accommodation related to her disability was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, but not limited to, her termination.

114.   Plaintiff's complaints of sex and disability discrimination and retaliation were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including, but not limited to, her termination.

115.   The retaliatory actions taken against Plaintiff after she engaged in protected activity would discourage a reasonable employee from complaining of discrimination at Defendant.

116.   As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

117.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

118.   Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

119.   The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

120.   No previous application has been made for the relief requested herein.

## COUNT I
## (VIOLATION OF TITLE VII)

121.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

122.    By committing the foregoing acts of retaliation against Plaintiff, Defendant has violated Title VII.

123.    Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

124.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

125.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

126.    No previous application has been made for the relief requested herein.

## COUNT II
## (VIOLATION OF ADA)

127.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

128.    By committing the foregoing acts of discrimination and retaliation, including its failure to provide a reasonable accommodation to Plaintiff, Defendant has violated the ADA.

129.    Defendant acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

130.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

131.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

132.    No previous application has been made for the relief requested herein.

**COUNT III**
**(VIOLATION OF THE PHRA)**

133.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

134.    By committing the foregoing acts of discrimination and retaliation, including its failure to provide a reasonable accommodation to Plaintiff, Defendant has violated the PHRA.

135.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

136.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

137.    No previous application has been made for the relief requested herein.

**COUNT IV**
**(VIOLATION OF THE PFPO)**

138.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

139.    By committing the foregoing acts of discrimination and retaliation, including its failure to provide a reasonable accommodation to Plaintiff, Defendant has violated the PFPO.

140.     As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

141.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

142.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the ADA;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make Plaintiff whole for all lost earnings,

earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(h)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(i)      awarding punitive damages to Plaintiff under Title VII;

(j)      awarding punitive damages to Plaintiff under the ADA;

(k)      awarding punitive damages to Plaintiff under the PFPO;

(l)      awarding Plaintiff such other damages as are appropriate under Title VII, the ADA, the PHRA and the PFPO;

(m)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(n)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


**CONSOLE MATTIACCI LAW, LLC**

BY:      _____
FERNANDO I. RIVERA, ESQ.
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676 (office)
(215) 754-4938 (fax)

Dated: 12/8/2020

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

COMPLAINANT:         :

**ALISON BURDO**        :  Docket No.

v.                 :

RESPONDENTS:         :

**PHILADELPHIA BUSINESS JOURNAL** :

and                :

**AMERICAN CITY BUSINESS JOURNALS** :

1. The Complainant herein is:

   Name: Alison Burdo

   Address:

2. The Respondents herein are:

   Name: Philadelphia Business Journal; American City Business Journals

   Address: 400 Market Street, Suite 1200
        Philadelphia, PA 19106

3. I, Alison Burdo, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my disability (including history of and regarded as) and my sex

(female), and retaliation because of my complaints of sex discrimination, as set forth below.

**Discrimination and Retaliation**

### A.  I specifically allege:

[1]        I was hired by Respondents in or about May 2015.

[2]        I am a current employee of Respondents.

[3]        I consistently perform my job duties in a highly competent manner, and have received positive feedback.

[4]        I report to Craig Ey (male), Editor-in-Chief, and Dell Poncet (male), Managing Editor.  Ey (male) and Poncet (male) report to William Sandy Smith (male), Market President and Publisher.

[5]        I hold the position of Digital Producer.

[6]        On November 29, 2017, in a meeting with Angelica Garcia (female), Events Director, I complained of sex discrimination.  I complained that Respondents' upcoming event, entitled "Sexual Harassment: How you can protect your company," was insensitive to female employees and that another local outlet had recently received backlash after having an all-male panel on women's issues in the workplace.  I suggested titling the panel "Handling sexual harassment in the workplace: What you need to know."  Garcia (female) stated that she would take my concerns to the management meeting.

[7]        On November 29, 2017, following my above meeting with Garcia (female), Ey (male) called me into his office to ask me why I went "over his head" to Garcia (female) with my concern, and instructed me to never speak to another manager without him present.

[8]        On December 21, 2017, Ey (male) unjustly criticized me and removed me from moderating a panel.

[9]     On August 16, 2018, during a work event, Bruce Johnson (male), Contractor, asked me if I had an announcement to make, about myself. I stated that I did not. Johnson (male) then asked me if I was pregnant. I was not pregnant and was offended by the comment.

[10]     On or about August 18, 2018, in a meeting with Garcia (female), I complained of sex discrimination. I complained that Johnson asked if I was pregnant and that Johnson (male) had sent an email to me in February, stating that he wanted to "find a reason to email [me]. I understood Johnson to be interested in a personal relationship with me.

[11]     Respondents took no action to remedy or prevent the sex discrimination to which I have been subjected.

[12]     On or about September 12, 2018, in a meeting with Smith (male), I complained of sex discrimination, including Johnson's pregnancy comment and email to me. I complained that Ey (male) did not treat my male coworkers in the same manner as he treated me, and that other employees have also noticed this differential treatment. Smith (male) stated that he would inform Human Resources.

[13]     Respondents took no action to remedy or prevent the sex discrimination to which I have been subjected.

[14]     On October 10, 2018, in a meeting with Ey (male) and Poncet (male), I was issued a Written Warning. My performance did not warrant a Written Warning. In the Warning, I was criticized for my "behavior" being "inappropriate and unprofessional." The Warning stated that "[t]here have been too many occasions when [I] have failed to appropriately interact with others." The Warning threatened that my "job will be in jeopardy" if Respondents

did not "see immediate and sustained improvement." The Written Warning contained false statements.

[15]     Respondents issued me a Written Warning because of my sex and/or my disability and/or my complaints of sex discrimination.

[16]     On October 11, 2018, in a meeting with Smith (male), I complained of sex discrimination.  I complained that I was being treated differently because I am female.  Smith (male) stated that it could be that I have a tough personality for Ey (male) to handle.  I responded that Ey (male) did not treat Hilario (male) in the same manner as he treated me, even though employees complain that Hilario (male) is rude and disrespectful.  Unlike Hilario (male), I was issued a Written Warning.

[17]     Respondents took no action to remedy or prevent the sex discrimination to which I have been subjected.

[18]     On October 31, 2018, while I was at work, I received a text message asking me to call my boyfriend's brother, who told me that my boyfriend had died in a car accident that morning.

[19]     On October 31, 2018, after receiving the above phone call, I left work immediately and went out on a leave of absence.

[20]     On November 1, 2018, I was prescribed anxiety medication.

[21]     On November 8, 2018, I returned to work from my leave of absence.  My eyes were teary and my voice was shaky, and I cried during some of my conversations, when I spoke with employees upon my return.  I broke down, crying, following hugs from coworkers later that morning.  I was encouraged to go home, and left work early.  I went out on another leave of absence.

[22]     On November 14, 2018, I returned to work from my leave of absence.

[23]     On November 16, 2018, in an email to Laura Barringer (female), Human Resources Director, I informed her that there had been a death in my family.  I stated that I was "still unclear on the expectations and consequences of the formal write up– there are no clear guidelines for what is considered improvement on my part."  Barringer (female) responded that she would reach out to me by phone.

[24]     At work, following my leave of absence, I made less small talk with other employees, I no longer wore makeup, I was told that I did not have to participate in work events, and my demeanor became more subdued and somber.

[25]     In or about late November 2018, I was diagnosed with acute anxiety, depression, and post-traumatic stress disorder.

[26]     In or about late November 2018, I was asked by Smith (male) if I was seeing a doctor or a therapist.

[27]     In or about late November 2018, I was asked by Poncet (male) if I was seeing a doctor or a therapist.

[28]     On or about November 19, 2018, I complained to Poncet (male) that Ey (male) had a hard time talking with strong women.

[29]     On  November 26, 2018, in a phone call with Barringer (female) to discuss the October 10, 2018 Written Warning, I broke down, crying, and I conveyed to her by the sound of my voice that I was distraught.  Barringer (female) asked me questions about my boyfriend's death.  After the call, Smith (male) told me that other employees could hear me crying and talking, and that it was distracting for them.

[30]     On November 30, 2018, when I arrived to work, I was shaky and had been crying. I went to the bathroom, and then the kitchen, to gather myself before going to my desk. When I arrived to the kitchen, Poncet (male) and Sharon Oliver (female), Director of Research, were there and began talking to me. I indicated that I needed a few minutes to gather myself before going to my desk. Within a few minutes, Smith (male) walked into the kitchen, looked at me, and then walked back to his office.

[31]     On November 30, 2018, later in the day, Barringer (female) sent me an email that attached FMLA leave documents and information. I had not requested FMLA leave documents or information. In her email, Barringer (female) stated that Smith (male) had called her to tell her "that he was concerned about [me] and [I] had to leave the office" that day. This was untrue; I did not leave the office that day. Barringer (female) stated that she "should have a call to talk about next steps and [my] options," including "a plan moving forward to make sure that [Respondents] are working with [me] to ensure that [I am] well and able to work." Barringer (female) stated that she was "very sorry that this has been such a difficult time for [me]."

[32]     On December 4, 2018, I spoke with Barringer (female) via phone to discuss FMLA leave and her above email.

[33]     On or about December 6, 2018, I met with Smith (male) to discuss FMLA leave. I stated that I received FMLA information from Human Resources without having requested it. Smith (male) told me that my "demeanor" was a distraction to my coworkers. During the meeting, my voice was shaky, my eyes were teary, and I had to pause while talking to refrain from crying.

[34]     On or about December 10, 2018, I submitted my intermittent FMLA leave request forms to Smith (male).  The forms stated that I had been diagnosed with "Anxiety, Major Depressive Disorder, Acute, and Acute Grief," and that, "until [my] Depressive symptoms are stabilized, [I] will need to be seen and/or need rest to maintain overall health both physical and mental health."  The forms stated that "crippling Depression will flare up and require absence from work."

[35]     On December 13, 2018, my request for intermittent FMLA leave was approved.

[36]     On December 18, 2018, in a phone call with Barringer (female), I was asked if my "condition" was improving.

[37]     On January 10, 2019, in a meeting with Garcia (female), I complained that Respondents never addressed my complaints of sex discrimination.  My voice became shaky and my eyes were teary.  Garcia (female) stated that Respondents should have done something, and that Johnson (male) would be working at Respondents' upcoming event.

[38]     On January 11, 2019, in a conversation with Garcia (female), I stated that it has taken "a lot of work to keep myself contained emotionally," and I hoped my complaints were taken seriously.  Garcia (female) told me that she informed Smith (male) of our conversation from the day before.

[39]     On January 14, 2019, in the morning, I informed Poncet (male) that my mother's cancer had returned.  I stated that, "given my state and the like HR monitoring," it seemed important to tell Respondents.  Poncet (male) responded that "[i]t doesn't hurt to let people know."

[40]      On January 14, 2019, in the afternoon, in a meeting with Ey (male) and Poncet (male), I was issued a Final Written Warning. My performance did not warrant a Final Written Warning. I was told that I was disrespectful. I stated that I did not understand why I was being criticized or issued a Final Written Warning, especially when I was on intermittent FMLA leave. I was interrupted when I tried to speak or explain my perspective, and was told that this was not "up for discussion." In the Final Written Warning, I was criticized for my "behavior and unprofessionalism." The Warning stated that my "attitude, communication, and professional demeanor are unacceptable and in need of immediate improvement." The Written Warning stated that my "conduct is disrespectful to [my] colleagues and supervisors and disruptive to the entire newsroom." The Written Warning contained false statements and references to my disability and Respondents regarding me as having a disability.

[41]      Respondents issued me a Final Written Warning because of my disability and/or sex and/or complaints of sex discrimination.

[42]      On January 14, 2019, after the above meeting, I met with Ey (male), Poncet (male), and Smith (male). I asked why I was issued the Final Written Warning, as my performance did not warrant it. My voice was shaky and I was close to crying. I was told that my behavior needed to improve, and that employees had complained of my "behavior" and "tone." I stated that I felt like I was under a microscope, that I was being treated differently than other employees, and that I felt like I was being set up for termination. I was told, without explanation, that the Final Written Warning was warranted and that it would stand. I was told that Respondents had made enough allowances for me and had accommodated me enough. I was told that other employees in the office had experienced deaths of loved ones and they had "gotten over it." I was told that I was trying to draw attention to myself. I was asked if I wanted to be

"normal." I was upset, and stated that I could go home and slit my wrists and no one would care as long as Respondents' email newsletter came out on time.

[43]     On January 15, 2019, in an email to Ey (male), Poncet (male), Smith (male), and Barringer (female), I stated that the Final Written Warning "was without merit" and "unwarranted." I stated that "I was blindsided" by the Warning. I complained that I was issued this Warning when "managers [were] aware of my FMLA status, as well as the personal traumas I have recently endured," and that the "focus on tone" was connected to my "emotional state."

[44]     On January 16, 2019, in an email from Barringer (female), I was told that "[t]he warning [I] received stands."

[45]     On January 17, 2019, in an email to Barringer (female), I stated that I was "happy to communicate further regarding the meeting that took place following the warning," and that "my previous email solely addressed the lack of validity for the warning, as well as concerns regarding management so quickly elevating the situation to such a level." I expressed that this unwarranted Warning and the comments made to me during my meeting with Ey (male), Poncet (male), and Smith (male) caused me significant stress. I complained that, in the meeting, I was told "that other people have experienced deaths of loved ones and have gotten over it" and that "I am expected to be chattier with my coworkers."

[46]     On or about January 26, 2019, I submitted my updated FMLA forms to Respondents. The forms stated that my "Depressive symptoms have increased significantly," that my "mental health is declining," and that, "if not treated adequately, [my] Depressive symptoms could escalate and threaten [my] safety."

[47]    As a result of the disability discrimination to which I have been subjected at Respondents, I have been forced to take a medical leave of absence. I remain on a medical leave of absence.

[48]    Respondents treated me differently, and in a more hostile and dismissive manner, than nondisabled[1] and/or female and/or noncomplaining employees.

[49]    Respondents discriminated against me based on my sex (female), my disability (including history of and regarded as), and my complaints of sex discrimination in issuing me Written Warnings and subjecting me to a hostile work environment.

[50]    Respondents failed to remedy or prevent the sex and disability discrimination to which I was subjected.

[51]    Respondents have a culture of discrimination against female employees, as evidenced (by way of example only) by an underrepresentation of female employees in high level positions. By way of example, and without limitation, Respondents' management team is comprised of seven (7) employees, only one (1) of whom is female.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and my disability (including history of and regarded as), and have retaliated against me for complaining of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

---

[1] Any references to an employee not having a disability are to the best of my knowledge.

**__X__        Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):  __(a); (d)__**

_____        Section 5.1 Subsection(s) _____

_____        Section 5.2 Subsection(s) _____

_____        Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.        Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

**__X__            This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.        The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

    complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

2 - 8 - 19

(Date Signed)

(Signature)       Alison Burdo
                  923 North 19th Street, Apt. 3
                  Philadelphia, PA 19130

# EXHIBIT B

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Alison Burdo**<br>**923 North 19th Street, Apt. 3**<br>**Philadelphia, PA 19130** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-60550** | **Kurt Jung,**<br>**State & Local Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*                                    9/28/2020

**Jamie R. Williamson,**
**District Director**                                    *(Date Mailed)*

Enclosures(s)

cc:  **PHILADELPHIA BUSINESS JOURNAL; AMERICAN CITY**
**BUSINESS JOURNAL**
**400 Market Street, Suite 1200**
**Philadelphia, PA 19106**

**Fernando Rivera, Esq**
**Console Mattiacci Law**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**